IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

GREGORY T. GRAB,           )     CIVIL NO.  05-00812 JMS/KSC
                                  )
           Plaintiff,         )
                                    )
        vs.               )     ORDER DENYING CROSS-
                                  )     MOTIONS FOR SUMMARY
THE AMERICAN LAWYERS       )     JUDGMENT
COMPANY, an Ohio Corporation,  )
                                  )
          Defendant.        )
_____ )

## ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

## I. INTRODUCTION

On December 29, 2006, Plaintiff Gregory T. Grab ("Grab") and

Defendant The American Lawyers Company ("ALC") filed cross-motions for

summary judgment.  Grab claims that ALC improperly requested a copy of his

credit report in violation of the Fair Credit Reporting Act ("FCRA"), cancelled his

contract with ALC based on information in the credit report, breached the parties'

contract, defamed him, and he seeks punitive damages.[1]  Based on the following,

the court DENIES the motions for summary judgment.

_____

[1] ALC sought summary judgment on all five Counts of the Complaint, while Grab sought
partial summary judgment as to Counts 1, 2, and 3.  Following the March 8, 2007 hearing, the
parties submitted a stipulation to dismiss with prejudice Counts 3 (breach of contract) and 4
(defamation), which the court signed on March 15, 2007.  (Doc. No. 77).

## II. <u>BACKGROUND</u>

ALC publishes "American Lawyers Quarterly" ("ALQ"), a directory of lawyers who do work in collections, creditor's rights and bankruptcy. According to ALC, the ALQ is used principally by lawyers, credit insurance companies, collection agencies, debt buyers, secured lenders and those who have clients with a need for out-of-town counsel to handle collection and bankruptcy cases.

On October 7, 1998, Grab, who is licensed to practice law in the State of Hawaii, executed two separate contracts for listing in the ALQ and sent them to ALC via facsimile (one for a listing for Honolulu and the second for Kauai, Maui, and Hawaii counties). Pl's. Concise Statement of Facts ("CSF"), Grab Decl. ¶ 6. The "Contract for Listing in the American Lawyers Quarterly" ("the contract") states "[t]his contract shall not be effective until executed at Cleveland, Ohio, by the Company, by one of its duly authorized officers." Pl's. CSF, Ex. 2. ALC's Exhibits A and L are contracts (for the Honolulu and Kauai/Maui/Hawaii county listings) signed by ALC Executive Vice President Thomas Hamilton and dated October 8, 1998. Grab disputes the effective date of the contracts and claims that the contracts dated October 8, 1998 are not the originals, that ALC has presented no evidence that Thomas Hamilton signed the contracts on October 8, and that

ALC has "failed to produce any transmittal cover sheet or other evidence that it sent the fully executed listing contract to Plaintiff at any time other than through discovery."  Pl's. Reply Mem. in Supp. at 3-4.

On October 13, 1998, ALC via facsimile acknowledged receipt of Grab's "completed application on possible insertion of your firm in a future publication of the American Lawyers Quarterly."  Pl's. CSF, Grab Decl. ¶ 7; Ex. 3. The October 13, 1998 letter faxed from Thomas Caruso, the ALC Contract Manager, states:

> Because of our bonding program, there are instances whereby our insurance company needs more information about the attorney with whom we are considering listing.
>
> One of those areas is the credit history of the prospective listee.
>
> As you know, the recent changes in the Fair Credit Reporting Act prohibits us from doing this, as the law requires us to get written permission from our prospective listee.
>
> Please provide us with your written permission to check your personal credit history.

Pl's. CSF, Ex. 3.  The bottom of the letter states "Yes, you have my permission to check my personal credit file" and has a space for Grab's signature and Social Security number.  *Id.*  Grab never returned this letter and claims that he never gave ALC permission to access his credit history.  Grab also claims that each time

Caruso contacted him from October through December 1998 he "responded by stating that any contract for listing in ALQ would be made only on the condition that no credit check would be conducted."  Pl's. CSF, Grab Decl. ¶ 10.  ALC, on the other hand, argues that it never agreed that no credit check would be run on Grab and that Grab "never stated that any contract for listing in the American Lawyers Quarterly ("ALQ") would be conditioned on ALC not obtaining his credit report or not doing a credit check on him."  Def's. Opp'n to Pl's. CSF, Caruso Decl. ¶ 6.  According to Grab, on "information and belief . . . in response to a telephone call from Thomas Caruso, I verbally gave my social security number to Defendant."  Pl's. CSF, Grab Decl. ¶ 13.

On January 5, 1999, Grab sent full payment for the Honolulu and outer-island listings for the period beginning October 1, 1998.  Grab's contract for both ALQ listings continued from year-to-year.  According to ALC, from 1999 through 2004, it received forty-eight complaints against Grab, mostly from collection agencies.  Def's. Separate Concise Statement of Facts ("SCSF"), Hamilton Decl. ¶ 4; Ex. C.  Further, between October 2001 and January 2004, ALC sent several letters and had phone conversations with Grab requesting payment for overdue balances.  Def's. SCSF, Hamilton Decl. ¶ 6; Ex. D.  The parties dispute the amount owed; on December 29, 2003, Grab owed ALC either

$165.00 (according to Grab) or $210.00 (according to ALC) for his ALQ listings. Pl's. CSF, Grab Decl. ¶ 15; Def's. Opp'n to Pl's. CSF, Ex. 4.

On December 29, 2003, ALC requested a copy of Grab's credit report from TransUnion, a credit reporting agency.[2]  The parties agree that ALC obtained Grab's credit report without his knowledge or permission.  ALC has set forth differing reasons for why it requested Grab's credit report.  When requesting the credit report, ALC certified to TransUnion that it was sought "[i]n connection with the extension of credit or review or collection of an account."  Def's. SCSF, Ex. B.  Hamilton submitted two separate declarations attempting to explain ALC's reason for obtaining the credit report.  His first declaration states:

> 7.  Because of the large number of complaints against Plaintiff and the need to collect Plaintiff's long overdue listing account, ALC requested the Trans Union Credit Report of Plaintiff dated December 29, 2003.
> 8.  Before renewing Plaintiff's contract or continuing to include Plaintiff in the ALQ directory, ALC had a duty to potential customers who may consult with the directory to assess the creditworthiness and trustworthiness of Plaintiff.
> 9.  ALC terminated Plaintiff's listing because of his poor account payment history and the large number of customer complaints against him.

Def's. SCSF, Hamilton Decl. ¶¶ 7-9.  Hamilton later states:

_____

[2] The credit report showed that Grab had five federal tax liens.  Def's. SCSF, Ex. E.

2.     I made the decision to delist Gregory T. Grab from The American Lawyers Quarterly because of his poor account payment history and the large number of customer complaints against him.

3.     My decision to delist Mr. Grab had nothing to do with any of the information contained in his Trans Union Credit Report dated December 29, 2003.  In fact, I had already made the decision to delist Mr. Grab prior to actually requesting his credit report.

Def's. Mem. in Opp'n to Pl's. CSF, Second Hamilton Decl. ¶¶ 2-3.

On January 1, 2004, ALC terminated Grab's ALQ listings.  Grab claims that ALC's decision to cancel his contracts was based on information contained in his credit report.  According to Grab, on March 24, 2004, he spoke to Caruso who "indicated . . . that ALQ had deleted my listing from ALQ and that he based his decision not to renew my contract on certain information allegedly contained in my personal credit report."  Pl's. CSF, Grab Decl. ¶ 22.  Caruso claims that the conversation occurred on March 25, 2004 and that he never told Grab that he had been delisted because of information in his credit report and that Caruso does not have decision-making authority to delist Grab from the ALQ.  Def's. Opp'n to Pl's. CSF, Caruso Decl. ¶¶ 8-9.

According to Grab, on March 10, 2004 he received a communication from Eric Main of United Commercial Collections indicating that Main understood that Grab was no longer bonded by the ALQ.  Pl's. CSF, Grab Decl.

¶ 21.  As a result of being delisted, Grab claims that referrals from ALQ ceased almost entirely from January 1, 2004 and that he suffered a loss of income as a direct result of ALC's actions.  Pl.'s CSF, Grab Decl. ¶ 27.

On December 28, 2005, Grab filed his Complaint against ALC alleging five Counts:  (1) that ALC violated the Fair Credit Reporting Act ("FCRA") by obtaining a copy of his credit report without a permissible purpose under 15 U.S.C. § 1681b; (2) that ALC did not take the required actions for users of credit reports who take adverse actions on the basis of information contained in a credit report, in violation of  15 U.S.C. § 1681m; (3) ALC breached the listing contracts when it obtained Grab's credit report without his permission; (4) that ALC made statements to third-parties indicating that Grab was not bondable, which is libel per se under Hawaii law; and (5) that ALC acted willfully when it violated the FCRA, entitling Grab to punitive damages.  On December 29, 2006, the parties filed separate motions for summary judgment.  On March 15, 2007, a stipulation dismissing with prejudice Counts 3 and 4 was entered.  Based on the following, the court DENIES the cross-motions for summary judgment as to Count 1 (violation of FCRA, 15 U.S.C. § 1681b) and Count 2 (violation of FCRA, 15 U.S.C. § 1681m), and ALC's motion regarding Count 5 (punitive damages).

## III.  **STANDARD OF REVIEW**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex*, 477 U.S. at 322).

///

///

///

# IV. <u>ANALYSIS</u>

## A.    Count 1:  Cross-Motions for Summary Judgment are Denied

The FCRA requires consumer reporting agencies to adopt "reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information[.]"  15 U.S.C. § 1681(b).  Under the FCRA, a consumer reporting agency may furnish a consumer report

> (3) To a person which it has reason to believe--
>> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
>> . . .
>> (F) otherwise has a legitimate business need for the information--
>>> (i) in connection with a business transaction that is initiated by the consumer; or
>>> (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b(a).  The FCRA also restricts the purposes for which credit reports may be requested.

> A person shall not use or obtain a consumer report for any purpose unless--

(1) the consumer report is obtained for a purpose for
which the consumer report is authorized to be furnished
under this section; and
(2) the purpose is certified in accordance with section
1681e of this title by a prospective user of the report
through a general or specific certification.

15 U.S.C. § 1681(f).

ALC first argues that it is not a "consumer reporting agency" as

defined in the statute, therefore, there is no liability against it under this section of

FCRA.  Second, ALC claims that it had a permissible purpose to obtain Grab's

credit report.  The court addresses each of these arguments in turn.

### 1.     *Whether ALC Can Be Liable Under the FCRA*

ALC claims that it is a "user" of a consumer credit report -- not a

"consumer reporting agency" -- therefore, it cannot be liable under the FCRA.

ALC's assertion is without merit.

The FCRA was amended in 1996 to add the provision that forbids

using or obtaining a consumer report unless the report was obtained for a

permitted purpose.  *See* 15 U.S.C. 1681b(f).  Several courts have recognized that

the "user" of a consumer report can be liable for using or obtaining the report for

anything other than permissible purposes.  *See, e.g., Cole v. U.S. Capital*, 389 F.3d

719, 731 n.14 (7th Cir. 2004) ("However, as noted by the FTC and as recognized

by every circuit to address the issue, the 1996 amendments to the FCRA included

§ 1681b(f) . . . . Thus, it is clear that the FCRA now imposes liability for using or

obtaining a consumer report in violation of the FCRA, not simply for releasing or

disseminating a report."); *Ausherman v. Bank of Amer. Corp.*, 352 F.3d 896, 900

n.3 (4th Cir. 2003) ("In 1997, however, Congress added § 1681b(f), rendering the

use of § 1681q to impose *civil* liability for improperly using and obtaining credit

reports largely unnecessary."); *Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir.

2002) ("The Fair Credit Reporting Act was amended in 1996 to add to section

1681b a provision that forbids using or obtaining a consumer report unless the

report was obtained for a permitted purpose."). *See also Myers v. Bennett Law*

*Offices*, 238 F. Supp. 2d 1196, 1201 n.1 (D. Nev. 2002) ("Congress added sections

1681b(f) and 1681n(b) to the statutory regime under the Consumer Credit

Reporting Reform Act of 1996, Pub. L. No. 104-208, 110 State. 3009-426

(codified as amended at 15 U.S.C. § 1681 *et seq*), in order to explicitly extend

liability to users of credit reports."); *Uhlig v. Berge Ford Inc.*, 257 F. Supp. 2d

1228, 1230 (D. Ariz. 2003) (analyzing plaintiff's claims "that defendant violated

section 1681b(f) of the FCRA").

   The court agrees; 15 U.S.C. 1681b(f) clearly imposes liability upon

users of consumer credit reports for violations of the FCRA.  ALC, therefore, can

be liable for using or obtaining a consumer report that was not obtained for a

permissible purpose.

### 2.    Whether ALC Had a Permissible Purpose

In general, 15 U.S.C. § 1681b enumerates the "permissible purposes"

for which a credit reporting agency may furnish a consumer credit report.  A

consumer reporting agency may furnish a consumer report

> (3) To a person which it has reason to believe--
>> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
>> . . .
>> (F) otherwise has a legitimate business need for the information--
>>> (i) in connection with a business transaction that is initiated by the consumer; or
>>> (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b(a).

ALC appears to set forth more than one permissible purpose to justify

its request for the credit report.  These purposes, however, appear inconsistent

with one another.  ALC certified to TransUnion that it was requesting Grab's

credit report "[i]n connection with the extension of credit or review or collection

of an account."  ALC also claims that it had a "legitimate business need" to obtain

Grab's credit report "in connection with a business transaction [that] was initiated by Plaintiff and to review Plaintiff's account for collection purposes."  Def's. Mem. in Supp. at 8.  Hamilton stated that ALC requested the credit report "[b]ecause of the large number of complaints against Plaintiff and the need to collect Plaintiff's long overdue listing account[.]"  Def's. SCSF, Hamilton Decl. ¶ 7.  Yet Hamilton also declared that, "[b]efore renewing Plaintiff's contract or continuing to include Plaintiff in the ALQ directory, ALC had a duty to potential customers who may consult with the directory to assess the creditworthiness and trustworthiness of Plaintiff."  Def's. CSF, Hamilton Decl. ¶ 8.

        The various purposes set forth to justify requesting Grab's credit report also appear to be at odds with Hamilton's claim that ALC had already made the decision to delist Grab before requesting his credit report.  *See* Def's. Mem. in Opp'n to Pl's. CSF, Second Hamilton Decl. ¶¶ 2-3.  If this is indeed the case, it casts doubt on ACL's claim that it requested Grab's credit report because it "had a duty to potential customers who may consult with the directory to assess the creditworthiness and trustworthiness of Plaintiff."  Def's. CSF, Hamilton Decl. ¶¶ 7-8.  Based on these inconsistencies, ALC has not met its burden for summary judgment.

Further, Grab has not established that ALC ordered his credit report without a permissible purpose.  The court concludes that parties have not met their burdens for summary judgment with regard to the permissible purpose requirement of § 1681b.[3]  The court DENIES both motions as to Count 1.

**B.      Count 2:  Cross-Motions for Summary Judgment are Denied**

Grab claims that ALC violated 15 U.S.C. § 1681m because it delisted him from the ALQ based on his credit report and did not provide him the notice

///

///

///

///

///

///

///

///

///

_____

[3] Because the parties have not met their burden on summary judgment with respect to whether ALC had a permissible purpose under the FCRA, the court does not reach the issue of whether the alleged oral agreement that ALC would not check Grab's credit history is enforceable.  Nor does the court reach Grab's argument that whatever legal right ALC had to access his credit report was lost when ALC expressly agreed not to obtain his credit report.

required by statute.[4]  ALC argues that § 1681m does not permit private civil actions and that it did not take any adverse action based on Grab's credit report.

### 1. *Whether a Private Cause of Action Exists Under Section 1681m*

ALC argues that Grab has no private cause of action under 15 U.S.C. § 1681m because the Fair and Accurate Credit Transaction Act of 2003

---

[4] The statute provides:

 If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall--
(1) provide oral, written, or electronic notice of the adverse action to the consumer;
(2) provide to the consumer orally, in writing, or electronically--
> (A) the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and
> (B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and
(3) provide to the consumer an oral, written, or electronic notice of the consumer's right--
> (A) to obtain, under section 1681j of this title, a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and
> (B) to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

15 U.S.C. § 1681m(a).

("FACTA") eliminated private actions under this section. Grab claims that
FACTA should not be applied retroactively to bar his cause of action.

    The current version of the FCRA provides in § 1681m(h)(8): "No
civil actions. Sections 1681n and 1681o shall not apply to any failure by any
person to comply with this section." The FACTA amendments were passed on
December 4, 2003 and became effective on December 4, 2004. *See* Pub. L. No.
108-159, 117 Stat. 1952 (2003). ALC ordered Grab's Credit report on December
29, 2003 (after the date of enactment, but before the date the FACTA amendments
became effective) and Grab filed his Complaint on December 28, 2005. The court
must decide whether the FACTA amendments apply to ALC's conduct that
occurred before the effective date.[5]

    In general, there is a presumption against statutory retroactivity. *See*
*Landgraf v. USI Film Prods.*, 511 U.S. 244, 265-66, 286 (1994). *Landgraf* sets
forth a two-step analysis to determine whether a statute applies retroactively:

---

[5] The Seventh Circuit has held that the FACTA does not apply retroactively to credit
offers made before the amendment's effective date. *See Murray v. GMAC Mortgage Corp.*, 434
F.3d 948, 951 (7th Cir. 2006) ("A recent amendment to the Act abolishes private remedies for
violations of the clear-disclosure requirement . . . but that change does not apply to offers made
before its effective date."). District courts have split on the issue. *Compare Crowder v. PMI
Mortgage Ins. Co.*, 2006 WL 1528608 (M.D. Ala. May 26, 2006) ("giving effect to section
1681m(h)(8) to preclude [plaintiffs'] lawsuit would not be impermissibly retroactive") *with
Miller v. CoreStar Fin. Group of Pa., Inc.*, 2007 WL 419194, *4 (E.D. Pa. Feb. 5, 2007) (finding
that "FACTA does not apply retroactively to credit offers made before its effective date."); 
*Phillips v. New Century Fin. Corp.*, 2006 WL 517653 (C.D. Cal. Mar. 1, 2006) (concluding that
"the FACTA amendment eliminating the private right of action does not bar Plaintiff's claim").

When a case implicates a federal statute enacted after the
events in suit, the court's first task is to determine whether
Congress has expressly prescribed the statute's proper reach.  If
Congress has done so, of course, there is no need to resort to
judicial default rules.  When, however, the statute contains no
such express command, the court must determine whether the
new statute would have retroactive effect, *i.e.*, whether it would
impair rights a party possessed when he acted, increase a
party's liability for past conduct, or impose new duties with
respect to transactions already completed.  If the statute would
operate retroactively, our traditional presumption teaches that it
does not govern absent clear congressional intent favoring such
a result.

*Id.* at 280.

  *Landgraf*'s first prong requires the court to determine "whether

Congress has directed with the requisite clarity that the law be applied

retrospectively.  The standard for finding such unambiguous direction is a

demanding one."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 316 (2001) (citation omitted).

Cases where the Supreme Court "has found truly 'retroactive' effect adequately

authorized by statute have involved statutory language that was so clear that it

could sustain only one interpretation."  *Lindh v. Murphy*, 521 U.S. 320, 328 n.4

(1997).  Such is not the case here.

  Congress has not expressly prescribed the statute's proper reach.

Section 312(f) of FACTA provides:

  Nothing in this section, the amendments made by this section,
  or any other provision of this Act shall be construed to affect

17

> any liability under section 616 or 617 of the Fair Credit
> Reporting Act (15 U.S.C. 1681n, 1681o) that existed on the
> date before the date of enactment of this act.

117 Stat. 1952.  This provision indicates that Congress did not intend to bar

lawsuits stemming from conduct that occurred before the date FACTA was

enacted, December 4, 2003.  It does not, however, specifically address the

application of FACTA to events that occurred between the date it was enacted and

its effective date, December 4, 2004.  ALC argues that § 312(f) shows that

Congress determined that FACTA should apply to all claims arising after the

statute's date of enactment, even though § 312(f) does not say as much.  ALC's

own argument demonstrates its flaw.  Although the court may be able to draw an

inference of Congressional intent, the requisite clarity from Congress is clearly

missing; the language at issue is not "so clear that it could sustain only one

interpretation."  *Lindh,* 521 U.S. at 328 n.4.

       *Landgraf*'s second prong requires the court to determine whether

applying FACTA to conduct that occurred before its effective date would have an

impermissible retroactive effect.  "If it does, the presumption against retroactive

application applies.  This presumption can only be rebutted by clear congressional

intent to the contrary."  *Scott v. Boos*, 215 F.3d 940, 943 (9th Cir. 2000).

A statute has retroactive effect if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. In the present context, court considers whether FACTA impairs the rights a party possessed when he or she acted.

The FACTA has retroactive effect. Prior to the amendment a plaintiff had a private right of action under § 1681m, while afterwards a plaintiff does not; currently, the section is only enforced administratively. In other words, prior to the amendment, the legal consequences of violation of § 1681m included liability to the consumer in a civil action, while after the amendment, the legal consequences only include liability to the Federal Trade Commission. The FACTA impairs the rights Grab possessed before § 1681m was amended. *See Scott*, 215 F.3d at 944-47 (finding that the Private Securities Litigation Reform Act of 1995 had retroactive effect because, prior to its enactment, a plaintiff had a RICO claim based on defendant's alleged securities fraud, while afterwards a plaintiff did not).

The court concludes that Congress has not expressly provided the statute's temporal reach and the statute has retroactive effect. Because there is no

clear Congressional intent to the contrary, the presumption against retroactivity

applies and Grab's cause of action is not barred by the 2003 FACTA amendment.

### 2.     Whether an Adverse Action Occurred

Section 1681m(a) of the FCRA enumerates the duties of users who

take actions adverse to the consumer based on information contained in a credit

report.  It is undisputed that ALC did not undertake any of the actions required by

this section.  The parties dispute whether ALC took an "adverse action" sufficient

to trigger the § 1681m(a) requirements.

Grab claims that ALC's decision to delist him from the ALQ was

based upon negative information in his credit report and is evidenced by the short

period between when ALC accessed his report (December 29, 2003) and when

ALC delisted him (January 1, 2004).  According to Grab, on March 24, 2004, he

spoke to Caruso who "indicated . . . that ALQ had deleted my listing from ALQ

and that he based his decision not to renew my contract on certain information

allegedly contained in my personal credit report."  Pl's. CSF, Grab Decl. ¶ 22.

ALC disputes this.

Caruso claims that he never told Grab that he had been delisted

because of information in his credit report and that Caruso does not have decision-

making authority to delist Grab from the ALQ.  Def's. Opp'n to Pl's. CSF, Caruso

Decl. ¶¶ 8-9.  According to ALC, it terminated Grab's ALQ listings "because of his poor account payment history and the large number of customer complaints against him."  Def's. SCSF, Hamilton Decl. ¶ 9.  Further, ALC claims that it made the decision to delist Grab before it requested his credit report.  Def's. Opp'n to Pl's. CSF, Second Hamilton Decl. ¶¶ 2-3.  Accordingly, there is a genuine issue as to whether or not Grab was delisted based on information in the credit report.

Summary judgment is inappropriate as to Grab's § 1681m claim because there is a genuine issue as to whether ALC took an adverse action.  The court DENIES the cross-motions for summary judgment as to Count 2.

## C.    Count 5:  Defendant's Motion for Summary Judgment is Denied

Grab seeks punitive damages in Count 5 based on ALC's alleged willful violation of law.  ALC has moved for summary judgment on all counts, but has not set forth any argument or discussion regarding punitive damages.  ALC's motion for summary judgment is DENIED as to Count 5.

///

///

///

///

# V. **CONCLUSION**

Based on the foregoing, the motions for summary judgment are

DENIED.  Accordingly, Counts 1, 2, and 5 remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 19, 2007.



J. Michael Seabright
United States District Judge

*Grab v. American Lawyers Co.*, Civ. No. 05-00812 JMS/KSC, Order Granting in Part and
Denying in Part Cross-Motions for Summary Judgment